FREDERICK SCHULENBURG ET AL., Respondents, *v.* JACOB A. VROOMAN ET AL., Appellants.

### April 22, 1879.

1. A material-man who has furnished materials for building four houses cannot, upon the payment to him of one-half of his demand, release two of the houses and maintain a lien against the remaining two, founded on

an account made up by taking one-half of each of the items composing the original account.

2. Where all the items of an account, except the few last, were supplied under one contract, and that contract was executed and the transaction closed, the time for filing a lien cannot be extended by furnishing, on a new request, additional articles, and adding them to the completed account.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

P. WILLIAM PROVENCHERE, for appellants : The account filed was not a true account. — *McWilliams* v. *Allen,* 45 Mo. 474.

RUDOLPH SCHULENBURG, for the respondents : The question as to whether the materials actually went into the building is one of fact, and will not be reviewed in an appellate court. — *Davis* v. *Farr,* 13 Pa. St. 167.

HAYDEN, J., delivered the opinion of the court.

This is a suit brought to recover a personal judgment against Vrooman, at whose request and under a contract with whom the plaintiffs furnished certain lumber, and to charge with a mechanic's lien two dwelling-houses in a row of four. The defence below was made by the testator of the present appellant, F. Provenchere having purchased the property in ignorance, as he asserts, of this lien-claim, and having at his request been made a defendant. In 1875, Vrooman being then, as for the purposes of the case may here be conceded, the owner of the land on which these two houses, and with them two other houses, the four to form a solid row, were about to be built, applied to the plaintiffs, and an agreement was made by which the plaintiffs engaged to furnish lumber in such quantity as might be needed for the houses Vrooman was then building. Under this agreement lumber was furnished for the building, thus consisting of a row of houses, to the amount of $2,213.66. The houses were built with a solid, continuous front wall; were all built upon the same plan, and were of the same dimensions. Owing to a peculiarity of construction, the

outer houses needed a little more lumber — how much more does not appear — than the centre houses. In April, 1876, the houses were completed. Vrooman paid to the plaintiffs about one-half of the whole amount due upon the account for lumber furnished for the row, and the plaintiffs released their lien upon the two eastern houses. In October, 1876, the lien-claim here sued on was filed. No lots of land are named other than the lot or parcel of land upon which these two western houses are, the description evidently being drawn with a view of covering the land occupied by the two houses. The account which forms the basis of the lien-claim is made up of items arrived at by taking one-half part of all the items composing the account of lumber as contracted for and furnished. In other words, the plaintiffs, having been paid half of their demand and having released two of the houses, filed one-half of their lien-claim thus split in two against the remaining houses, as a new account complete in itself. Some few items were added for lumber furnished exclusively to the western houses after the others had been released.

The lien account as filed is credited with a little over $600, this amount representing a note made by Vrooman and secured by a second deed of trust on the most western house, and it is for the balance, $490.80, that the present lien is claimed against the two most western houses of the row. The plaintiffs had judgment below as prayed for.

It seems to be the theory of the plaintiffs that they can maintain a lien upon any particular part of this building, for which they furnished lumber as a whole, if they can show the proportionate amount of lumber which went into that particular part. If it could be admitted that the lien law pays no regard to the individuality of a lien, but allows the claimant, contrary to the well-settled rule which forbids a plaintiff to divide his demand, to split it into parts, still there is here no evidence that the present account gives the

true or just proportions. It is an assumption that exactly one-half of the items of the account that described the lumber as actually furnished, *i.e.*, to the building, went into the houses now sought to be held. If it may be said that there is no disturbing element in regard to the "end houses," still it is not shown that lumber obtained from other material-men was not used. Items, moreover, of lumber furnished exclusively to those two western houses are mingled with items obtained, as above, by the process of division.

But, apart from errors in the process, the process itself is certainly not evidence', or the proper foundation of a legal conclusion. The division by two, and the inference that because the houses are of the same dimensions about half of the lumber must have gone into two out of the four houses, is rather a process of reasoning or a probable conjecture. If there were fifty houses of various sizes, a calculation based upon the number and size of the houses might be made with probable results ; yet, would it be contended that a material-man could thus divide his claim into fractions? The objection to such a proceeding would not relate merely to keeping accounts. It would be that the account would misrepresent the facts. This it ought not to do. Not only does the statute require a "just and true account," but it is by reason of the facts, not merely of the account describing the facts, that the lien arises. Here, the lien in its inception was no such lien as that now sought to be enforced. It certainly is not the legal theory that, be the facts what they may, as many liens have an inception as the lien-claimant chooses afterward to claim. He may furnish materials for a particular house, and there his lien will arise accordingly ; but if he chooses not to do so, but to furnish for a row of houses, and to a single owner, he cannot alter the past. His lien depends upon the facts, not upon the way in which he puts the facts. It is true, he may by one act furnish materials for disconnected houses on sepa-

rate lots ; but there the law does not allow him to charge the whole property, as if it were, as here, a solid row to which, as one entire structure, materials have been furnished. *Fitzgerald* v. *Thomas*, 61 Mo. 499 ; *Fitzpatrick* v. *Thomas*, 61 Mo. 512. See *James* v. *Hambleton*, 42 Ill. 308 ; *Moran* v. *Chase*, 52 N. Y. 346 ; *Landers* v. *Dexter*, 106 Mass. 531.

As the court below found for the plaintiffs, it is presumed to have found that the lumber, as in the account described, went into these particular houses. *Schulenburg* v. *Prairie*, *etc.*, 65 Mo. 295 ; *Simmons* v. *Carrier*, 60 Mo. 582. The articles of the account are supposed by law to be the identical articles used in the building. Building-materials, it is true, are ordinarily of such a nature that even a correct description is often too vague to positively identify them ; but can a lien-claimant avail himself of this vagueness to obtain a lien for materials which the evidence fails to show were ever used in the building sought to be held? Here, the materials were furnished for and promiscuously used in these two houses and two other houses ; and owing to the fact that materials of the same general description were used in each house, the plaintiffs assume that the items in the bill — as, so many shingles, cedar posts, or blinds — describe the articles used in these two houses.

There seems to have been several irregularities in the allowance, but after what has been said it is unnecessary to examine the details of the account. It may, however, be observed that if, as there seems evidence tending to show, all the items. of the account except the few last were supplied under one contract, and that contract was executed and the transaction closed, the time for filing the lien-claim could not be extended by the plaintiffs furnishing, upon a new request, additional articles, and by adding to the already completed account the new items thus ordered. In this respect, as in that above specified, the lien account should describe, not misrepresent, the actual fact. As on the one

hand there should be no breaking up of one account into parts, so on the other there should be no mingling of items constituting, not one continuous and running account, but different causes of action.

The judgment of the court below is reversed and the cause remanded, with directions to enter only a personal judgment against the proper parties. All the judges concur.